1

2      **UNITED STATES DISTRICT COURT FOR THE**

3      **DISTRICT OF PUERTO RICO**

4

5   NATIONAL MEDICAL CARE, INC., *et*

6   *al.*,
    Plaintiffs,

7

8   v.                                          Civil No. 04-1812 (HL)

9   DR. JOHNNY RULLÁN, *et al.*,

10   Defendants.

11

12                      **OPINION AND ORDER**

13        Plaintiffs,[1] who operate dialysis clinics in numerous locations throughout Puerto Rico,

14   have brought this suit against several Managed Care Organizations ("MCOs");[2] the Puerto

15

16   _____

17        [1] The Plaintiffs include:  National Medical Care, Inc., d/b/a Fresenius Medical

18   Care North America; Bio-Medical Applications of Puerto Rico, Inc.; Bio-Medical

19   Applications of Arecibo, Inc.; Bio-Medical Applications of Aguadilla, Inc.; Bio-Medical

     Applications of Bayamón, Inc.; Bio-Medical Applications of Caguas, Inc.; Bio-Medical

20   Applications of Carolina, Inc.; Bio-Medical Applications of Guayama, Inc.; Bio-Medical

21   Applications of Humacao, Inc.; Bio-Medical Applications Las Américas, Inc.; Bio-

     Medical Applications of Mayagüez, Inc.; Bio-Medical Applications of Ponce, Inc.; Bio-

22   Medical Applications of Río Piedras, Inc.; Bio-Medical Applications of San Germán,

23   Inc.; Bio-Medical Applications of San Juan, Inc.; and Quality Care Dialysis Center of

     Vega Baja.

24

25        [2] These companies provide managed health care services in Puerto Rico pursuant

26   to contracts with ASES:  Medical Card System, Inc. ("MSCI") and MCS Health

     Management Options, Inc. (MCSI-HMO), which are collectively referred to as "MCS";

27   Triple-C, Inc. and Triple-S, Inc., collectively referred to as "Triple-C"; Cooperativa de

     Seguros de Vida de Puerto Rico ("COSVI"); and Humana Health Plans of Puerto Rico,

28   Inc. ("HUMANA").

2

Rico Services Administration ("ASES" by its Spanish acronym);[3] the Secretary of Health of the Commonwealth of Puerto Rico, Dr. Johnny Rullán; the Director of the Commonwealth's Office of Economic Assistance to the Medically Indigent, Wendy Matos;  the Secretary of Health and Human Services ("HHS"), Michael O. Leavitt[4]; and,  the Administrator of the Centers for Medicare and Medicaid Service ("CMS"), Mark B. McClellan.  (See Docket No. 37, Amended Complaint, filed on November 1, 2004).  The Center for Medicare and Medicaid Services ("CMS"), a division of the U.S. Department of Health and Human Service ("HHS"), is the federal agency responsible for the implementation and interpretation of both Medicare and Medicaid regulation. For purpose of clarity, the Court will refer to the Commonwealth state officials as the "Commonwealth Defendants"; the Federal officials will be referred to as the "Federal Defendants"; and the several Managed Care Organizations will be referred to as the "MCO Defendants."

Plaintiffs' claims are brought under 42 U.S.C. § 1983, alleging violations of the Medicaid Act, and of the equal protection and due process guarantees under the United States Constitution.  Plaintiffs also bring claims against the Secretary of HHS  and the Administrator of  CMS  for ignoring their statutory duty to enforce compliance with federal laws and regulations.  Finally, Plaintiffs bring contract-related claims against the MCOs entrusted with providing coverage to the Puerto Rico's Medicaid population because of their continued refusal to pay the disputed amounts.

---

[3] ASES, a public corporation existing under the laws of the Commonwealth of Puerto Rico, is in charge with implementing and administering Puerto Rico's Medicaid plan, commonly known as "La Reforma" (Health Care Reform).  See 24 L.P.R.A. § 7001 et seq.  ASES, in turn, negotiates and contracts with private health insurers, such as MCOs, to provide health care coverage to Puerto Rico's medically indigent population and other eligible individuals.  See 24 L.P.R.A. § 7004(b).

[4] The complaint  named as a defendant Tommy G. Thompson in his capacity as the Secretary of Health & Human Services.  Michael O. Leavitt, the current Secretary of Health & Human Services, has been automatically substituted for former Secretary Thompson pursuant to Fed. R. Civ. P. 25(d).

3

The amended complaint alleges that since 1999 the Commonwealth's Medicaid program has failed to make the 20% coinsurance and deductible payments for the dialysis services provided by Plaintiffs to dual-eligible patients suffering from end-stage renal disease ("ESRD"). Plaintiffs contend that defendants' failure to pay said coinsurance violates federal law, and thus seek declaratory relief against all Defendants pursuant to 42 U.S.C. § 1983. Specifically, Plaintiffs seek a declaration that federal law requires the Puerto Rico Medicaid program, including agents and the third-party insurers through which they operate, to pay them the Medicaid deductible and coinsurance amounts for dialysis services provided to dual-eligible Medicaid patients.

Defendants moved to dismiss the complaint for lack of federal jurisdiction, asserting that Plaintiffs have no private right of action under the Medicaid Act, and have failed to state a claim under either the Medicaid Act or the United States Constitution. The Court held a hearing on Defendants' motions to dismiss on July 7, 2005. (See Docket Nos. 56, 57, 67, 71, and 91).

Defendants' threshold arguments question the Court's jurisdiction under Rule 12(b)(1). Pursuant to Rule 12(b)(1), the Court has considered several materials submitted by the parties in determining whether plaintiffs have borne their burden of establishing subject matter jurisdiction. See Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002). Having considered the various 12(b)(6) motions, the Court credits Plaintiffs' well-pleaded allegations in the complaint and draws all reasonable inferences in their favor. See Muñiz-Rivera v. United States, 362 F.3d 8, 11 (1st Cir. 2003)(citing Valentin v. Hosp. Bella Vista, 254 F.3d 358, 365 (1st Cir. 2001)); see also Redondo-Borges v. United States Department of Housing and Urban Development, 421 F.3d 1, 5 (1st Cir. 2005).

## FACTUAL BACKGROUND

Plaintiffs operate nineteen dialysis clinics throughout Puerto Rico that provide medical care to approximately 2,670 patients who suffer from chronic kidney failure, also known as

4

end-stage renal disease ("ESRD")[5].   Typically Plaintiffs' patients are referred to as "dual-eligibles" –indigent persons who rely on both federal Medicare and Medicaid assistance to pay for their treatments.   The federal government, through the Medicare program, pays for eighty percent (80%) of the cost of the dialysis treatments for ESRD patients serviced by Plaintiffs. At issue here is the remaining twenty percent (20%) of the cost for the dialysis service, also known as the Medicare coinsurance and/or deductible.   From 1994 until 1999, the Commonwealth paid the 20% coinsurance through its Medicaid program.   Specifically, the 20% coinsurance was authorized by the Commonwealth and paid by the MCOs, pursuant to contracts between Plaintiffs and the MCOs.

On May 3 and September 12, 1999, the Commonwealth issued two Letter Rulings announcing that it would no longer authorize payment of the 20% coinsurance for ESRD patients. The MCO Defendants, claiming they had "no alternative" but to comply with the Commonwealth's decision, immediately stopped paying any Medicaid benefits (i.e., the 20% coinsurance) for ESRD services.[6]   Plaintiffs allege that they protested the 1999 Letter Rulings at both the Commonwealth and federal levels on multiple occasions to no avail.

In December of 2002, the Associate Regional Administrator of CMS wrote a letter to

---

[5] ESRD patients typically visit one of Plaintiffs' clinics and undergo dialysis at least three times per week, for several hours per session.  In the dialysis process, the patient is connected to a dialysis machine by a series of tubes and shunts.  The dialysis process acts as an artificial kidney.  The dialysis machine cleanses the patient's entire blood supply through a series of filters that remove the impurities and deadly and toxins from the blood. Without this filtration, the build-up of toxins in the patient's blood would result in death.

[6] The MCO Defendants include MCS, Triple C, COSVI and HUMANA.  Given that these entities began providing health care services through "La Reforma" at different points in time, Plaintiffs' claims against them are somewhat varied.  For example, defendant MCS and Triple-C have paid Plaintiffs nothing for the dialysis services they offered ESRD dual-eligible patients since 1999.  Defendant COSVI has refused to paid the coinsurance amounts to Plaintiffs for the dialysis services since 2003.  Defendant HUMANA, has refused to pay the coinsurance amount in question since July 28, 2004.

1  the Commonwealth's Office of Economic Assistance to the Medically Indigent ("OEA").  The

2  letter clearly stated that Puerto Rico's Medicaid agency was obliged to provide for payment

3  of the deductible and coinsurance amounts for ESRD services of dual-eligible patients. (See

4  Docket No. 91, Exhibit B at 2).   The comminatory letter requested  the Commonwealth to

5  submit a revised Medicaid State Plan, and warned that failure to do so could result in CMS

6  taking compliance action against the Commonwealth's Department of Health. (Id. at 3).

7  Subsequently, on April 13, 2004, CMS wrote another letter[7] to the Commonwealth's OEA

8  stating, in relevant part, that Puerto Rico could not "opt-out" of its obligation to pay the

9  coinsurance and deductibles with regards to dual-eligible ESRD patients. (See Docket No. 91,

10  Exhibit C at1).   Soon thereafter, on April 21, 2004, CMS wrote another letter to the

11  Commonwealth's OEA, retracting the April 13 letter. (See Docket No. 91, Exhibit D).  In the

12  April 21st letter, CMS states that "opting out of QMB requirements does not eliminate

13  applicable Medicaid coverage and payment requirements for dual eligibles, including third

14  party liability (TPL) requirements."  Id. at 1. The letter further states CMS's position that

15  "Medicaid requirement are unaffected by the statutory provision permitting the territories to

16  opt out of extending eligibility to QMBs."  Id. at  2.

17      Plaintiffs have continued to provide dialysis services to all of their ESRD patients to

18  date, even though Defendants have not paid the 20% coinsurance since 1999.  Plaintiffs allege

19  that they  are now owed in excess of 20 million dollars for these services.

21      **ANALYSIS**

22  *I.  Statutory and Regulatory Background*

23  *a.  Medicare*

24      Title XVIII of the Social Security Act, also known as Medicare,  is a federal health care

---

27  [7] It appears that this letter was in response to a memorandum sent to CMS by the
Commonwealth on March 8, 2004, in which the Commonwealth argued its position
relative to the payment of Medicare co-payments and deductibles for dual-eligibles.

6

benefit program that provides financial assistance for medical procedures to certain disabled individuals and patients aged 65 or over. 42 U.S.C. §§ 426; 1395c. Medicare is also available for all individuals diagnosed with ESRD. 42 U.S.C. § 1395c. Unlike Medicaid, Medicare provides health benefits to eligible patients without regard to income.

Medicare has four sub-programs.[8] This dispute centers around Part B of the Medicare Act, which provides supplementary medical insurance for hospital out-patient services, physician services and other medical services not covered under Part A. 42 U.S.C. § 1395k. Under Part B of the Medicare Act, enrollees must pay a monthly premium and annual deductible. 42 U.S.C. §§ 13951(b), 1395r. After the deductible is exhausted, the federal government will pay 80% of the reasonable charge for the services, which charge is set annually by the Secretary. 42 U.S.C. §§ 13951(a), 1395w-4. The provider can charge the beneficiary the remaining 20% of the reasonable charge, which is typically referred to as the co-payment or as coinsurance. 42 U.S.C. § 1395w-4.

*b. Medicaid*

The Medicaid Act, under Title XIX of the Social Security Act, is a federal-state cooperative cost-sharing program that provides medical assistance to families and individuals with insufficient income and resources.  42 U.S.C. § 1396 et seq.; see also United States v. Lahey Clinic Hospital, Inc., 399 F.3d 1, 4 (1st Cir. 2005).  While a state's participation in Medicaid is not mandatory, once a State decides to participate, it must comply with all applicable federal statutory and regulatory requirements.  See 42 U.S.C. § 1396a; 42 C.F.R. Part 430 et seq.  The Commonwealth of Puerto Rico is considered a State for purposes of the Medicaid Act, 42 U.S.C. § 1301(a)(1), and for purposes of this opinion the Court will refer to it as a State.  See  Rio Grande Community Health v. Rullan, 397 F.3d 56, 61 (1st Cir. 2005).

---

[8] Part A provides benefits for hospital, related post-hospital, home health services, and hospice care benefits. 42 U.S.C. § 1395c et seq. Part C expands the availability of managed care arrangements for Medicare patients.  Finally, Part D will provide an outpatient prescription drug benefit beginning in 2006.

7

A participating State administers its Medicaid program pursuant to a "State Plan" that the Secretary must approve.  42 U.S.C. § 1396a; see, e.g., Alaska Dept. of Health and Social Servs. v. Centers for Medicare and Medicaid Servs., 424 F.3d. 931 (9th Cir. 2005).  Upon approval of its State plan, a State becomes entitled to reimbursement by the federal government for a portion of its payment to hospitals and other providers of medical assistance to Medicaid recipients.  42 U.S.C. § 1396b(a).  This federal contribution to a State's Medicaid expenses is termed "federal financial participation."  42 U.S.C. §§ 1396a; 1396b; 42 C.F.R. Part 430. Unlike other states participating in the Medicaid program, unfortunately, the amount of federal financial participation payable to Puerto Rico is capped at a specific amount each fiscal year. See 42 U.S.C. § 1308(c).[9]

Medicaid programs are administered by the States, not the federal government.  For example, within the bounds of federal statutory and regulatory requirements, the States enter into agreements with providers of services and establish a level of reimbursement paid to providers.  See 42 U.S.C. §§ 1396a(a)(13)(A), 1396a(a)(27).  In addition, States have the alternative of contracting with managed care organizations to provide some or all of the covered services in exchange for payment under a prepaid capitation rate or some other risk-based arrangement.  42 U.S.C. § 1396b(m).

The Commonwealth of Puerto Rico uses a managed care approach to running its Medicaid system.  Under this arrangement, the Commonwealth's Medicaid agency contracts with MCOs to arrange for the delivery of health care services to Medicaid patients.  The MCOs

---

[9] Social Security Beneficiaries residing in Puerto Rico are placed in the infelicitous condition of receiving less beneficial treatment than those residing in the mainland United States.  Califano v. Torres, 98 S.Ct. 906 (1978)(upholding the denial of Supplemental Social Security Income (SSI) program for aid to qualified aged, blind and disabled persons residing in Puerto Rico); Harris v Rosario, 100 S.Ct. 1929 (1980) (The Aid to Families with Dependent Children (AFDC) program providing for less assistance for needy dependent children residing in Puerto Rico than is provided to children residing in the United States does not violate the equal protection guarantee).  But see Justice Marshall dissent at 930-31.

8

1   receive predetermined periodic payments in return for providing the required services.  42

2   U.S.C. § 1396b(m)(2)(A)(iii); see also 42 C.F.R. Part 438; see also Rio Grande Community

3   Health v. Rullan, 397 F.3d at 62 (for a general description of Puerto Rico's Medicaid

4   program).  The MCO, in turn,  can also contract with various health care providers (such as

5   plaintiffs) to provide services to Medicaid patients in exchange for a contractually agreed upon

6   payment rate.

7          The Centers for Medicare & Medicaid Services ("CMS"), a division of the U.S.

8   Department of Health and Human Services  ("DHHS"), is the federal agency responsible for

9   the implementation and interpretation of both Medicare and Medicaid regulation.   CMS

10  oversees the State's administration of its Medicaid program.  If the Secretary finds that a State

11  is not in compliance with its plan, the Secretary may take certain steps such as withholding

12  further payments to the State.  See 42 U.S.C. § 1396c.  The Secretary is required to provide

13  the State with "reasonable notice and opportunity for hearing" before taking any action against

14  the State for not being in compliance with the provisions of the Medicaid Act.  Id. ; see also

15  42 C.F.R. § 430.35; 42 C.F.R. part 430.

16

17  *c. Dual Eligibles and QMBs*

18         The Medicare and Medicaid Acts overlap in coverage for needy persons who are also

19  elderly or disabled.  Such individuals are referred to in the Medicaid Act as qualified medicare

20  beneficiaries. ("QMBs").  See 42 U.S.C. § 1396d(p)(1).  QMBs fall into two categories of

21  individuals: those who are not poor enough to qualify for Medicaid (pure QMBs) and those

22  whose level of financial need is so great as to qualify them for Medicaid (dual eligibles)[10].  See

23  e.g., Rehabilitation Assoc. of Va., Inc. v. Kozlowski, 42 F.3d 1444, 1447 (4th Cir. 1994);

24

25  _____

26         [10]  Dual-eligible patients constitute a very high percentage of the Defendant

27  MCOs' insureds who receive dialysis services from Plaintiffs.  The Commonwealth of
    Puerto Rico and the MCOs currently pay Plaintiffs nothing for the services they provide

28  to dual-eligible patients.

9

1  Briggs v. Commonwealth, 707 N.E.2d 355, 357 (Mass. 1999).[11]

2       In 1988 Congress made coverage for "pure" QMBs (those not covered by Medicaid),

3  mandatory.  See Briggs, 707 N.E.2d at 363; 42 U.S.C. § 1396d(p)(1).  Since 1988, therefore,

4  the Medicare Act requires States to include in their State plan medical assistance for medicare

5  cost-sharing for QMBs, as described in 42 U.S.C. § 1396d(p)(1);[12] see also, Rehabilitation

6  Assoc. of Va., Inc. v. Kozlowski, 42 F.3d at 1458 (discussing Congress's 1988 Amendments

7  and the QMB buy-in program).    Puerto Rico, however, is exempted from this buy-in

8  requirement.  See 42 U.S.C. § 1396d(p)(4)(A).[13]  In other words,  Puerto Rico is not required

9  to pay Medicare premiums, deductibles and coinsurance for QMBs.

10      The Defendants point to the aforementioned exemption to the 'buy-in' requirement in

11  support of their arguments for dismissal.  Accordingly, they contend that Puerto Rico can 'opt-

12  out' of Medicare's  cost-sharing requirements pursuant to 1396d(p)(4)(a).  They further

13  contend  that this 'opt-out' provision applies to all QMBs – both pure QMBs and dual

14  eligibles.  In other words, Defendants contend that when the Commonwealth determined

15  through the 1999 ASES-Letter-Rulings that it would stop paying the 20% deductible for dual

16

17       [11]  At one time, Congress defined QMBs to only refer to pure QMBs; however, in

18  1988, Congress amended the definition to also include dual eligibles.

19       [12]  "Cost-sharing" is defined as Medicare premiums, coinsurance and deductibles.

20  See 42 U.S.C. § 1396d(p)(3). Most of the case law discussing the difference between pure
    QMBs and dual eligibles arises in the context of challenges to the reimbursement rates for

21  co-payment amounts.  See e.g., McCreary, M.D. v. Offner, 172 F.3d 76  (D.C. Cir. 1999);
    Paramount Health Systems, Inc. v. Wright, 138 F.3d 706, 708-09 (7th Cir. 1998).

22

23       [13]  Section 1396d(p)(4)(A) states, in relevant part: "Notwithstanding any other
    provision of this subchapter, in the case of a State (other than the 50 States and the

24  District of Columbia)– (A) the requirement stated in section 1396(a)(10)(E) of this title

25  shall be optional. . .". Id.  Section 1396(a)(10)(E) refers to section 1396d(p)(1) for
    defining QMBs.  QMBs are individuals "who are eligible for Medicare Part A benefits,

26  have incomes not exceeding the federal poverty line, and whose resources do not exceed

27  twice the amount set as the maximum for receiving benefits under the supplemental
    security income program."  Rehabilitation Assoc. of Va., Inc. v. Kozlowski, 42 F.3d at

28  1447 n1 (citing 42 U.S.C. §1396d(p)(1)).

10

eligible ESRD patients it was merely  exercising the discretion granted to it by section 1396d(p)(4)(A).

Plaintiffs do not dispute that the Commonwealth may 'opt-out' of Medicare's cost-sharing for pure QMBs.  Rather, Plaintiffs argue that the Commonwealth has an obligation to pay the 20% coinsurance under the Medicaid's provisions for 'dual-eligible' patients covered by both Medicaid and Medicare.  It is not surprising that the parties disagree as to the definition of QMBs, given the amount of discrepancy in the case law and the lack of clarity in the statutory language.  See e.g., McCreary, M.D. v. Offner, 172 F.3d 76, 78 (D.C.Cir. 1999)(stating that in 1988, Congress redefined the term "QMB" to include dual eligibles); Rehabilitation Assoc. of Va., Inc. v. Kozlowski, 42 F.3d at 1447; Briggs v. Commonwealth, 707 N.E.2d at  357 (stating that the current definition of QMBs encompasses two subsets of individuals, pure QMBs and dual-eligibles).

Despite the apparent confusion regarding the definition of QMBs, and its relation to the 'opt-out' provision, the Court agrees with the plaintiffs, at least at the motion to dismiss stage, that Puerto Rico might be able to 'opt-out' of Medicare's cost-sharing for pure QMBs, but that the same is not true as to dual-eligible patients (those covered by both Medicaid and Medicare). If one were to believe Defendants' interpretation of the definition of QMBs and the 'opt-out' provision, Puerto Rico could have chosen not to pay the 20% deductibles to ESRD dual-eligibles since 1988.  The Commonwealth of Puerto Rico did make these payments through their Medicaid program from 1994 until 1999.  It was not until 1999, that the Commonwealth decided, through the ASES-Letter-Rulings, to discontinue the payments.

In addition, and most importantly, the record contains several letters[14] from CMS' Associate Regional Director to the Director of the Office of Economic Assistance to the Medically Indigent of the local Department of Health supporting plaintiffs' position.  (See

_____

[14] It appears from the record that these letters were written as a response to the dispute that had been brewing between plaintiffs and defendants ever since the 1999 ASES-Letter-Rulings.

11

1  Docket No. 91, Exhibits B-D).  In the letter of December 13, 2002, CMS states that "[s]ince
2  ESRD services are covered Medicaid services within the scope of the Puerto Rico State plan,
3  the Medicaid agency must provide for payment of the deductible and coinsurance amounts
4  associated with these services." Id. at 2.  In addition, the letter warns that a  "state . . .may treat
5  Qualified Medicare beneficiaries (QMBs) differently from the way they treat dual eligibles.
6  . .[but that said] distinction is . . .not relevant here, as Puerto Rico is statutorily exempt from
7  having to cover expenses of QMBs in its Medicaid Program." Id.  Not only does this letter
8  suggest, as has been argued by plaintiffs, that QMBs and dual eligibles are treated differently,
9  but it also supports the contention the 'opt-out' provision does not exempt Puerto Rico of its
10  responsibilities towards dual-eligibles under Medicaid, since the letter goes on to state that "the
11  payment requirement for dual eligibles are applicable to Puerto Rico, although those for QMBs
12  are not." Id. The letter concludes by asking the Commonwealth to submit a revised State Plan
13  by January 15, 2003, and that failure to do so could result in compliance action against the
14  Puerto Rico Department of Health.[15]  CMS reiterates its position relative to QMBs and dual
15  eligibles in two additional letters, one dated April 13, 2004, and the other dated April 21, 2004.
16  (See Docket No. 91, Exhibits C and D).  In the April 21st letter, CMS writes: ". . .opting out
17  of QMB requirements does not eliminate applicable Medicaid coverage and payment
18  requirements for dual eligibles, including third party liability (TPL) requirements . . ..  The
19  position of CMS is that these regular Medicaid requirements are unaffected by the statutory
20  provision permitting territories to opt out of extending eligibility to QMBs." (Docket No. 91,
21  Exhibit D, pg 1-2).

22        In line of the foregoing, the Court finds that the Commonwealth's decision not to
23  participate in the QMB program, does not exempt the Commonwealth from its responsibilities
24  under Medicaid as it concerns the dual-eligible ESRD patients.

25
26

27        [15]  There is no record evidence as to whether the Commonwealth followed CMS's
28  directives by submitting a revised State Plan.

12

## II.  Private Right of Action under section 1983

The next jurisdictional question raised by Defendants' motions is whether section 1983 provides plaintiffs with a cause of action to pursue Defendants' alleged violations of certain provisions of the Medicaid statute, namely,  42 U.S.C. § 1396a(a)(10)(B)[16] and 42 U.S.C. § 1396a(a)(37)(A)[17].

"Section 1983 imposes liability on anyone who, acting under color of law, deprives a person of any 'rights, privileges, or immunities secured by the Constitution and laws.' 42 U.S.C. § 1983.  Not all violations of federal law give rise to § 1983 actions: '[the] plaintiff must assert the violation of a federal *right*, not merely a violation of a federal *law*.'"  Rio Grande Community Health Center, Inc. v. Johnny Rullan, 397 F.3d at 72 (citing Blessing v. Freestone, 520 U.S. 329, 340 (1997)).

When determining if a particular statutory provision gives rise to an enforceable right under section 1983, the First Circuit has followed the three-part test laid out in Blessing, namely:  "1) whether Congress intended that the provision in question benefit the plaintiff,  2) whether the right supposedly protected by the statute is vague and amorphous so that its enforcement would strain judicial competence, and  3) whether the provision unambiguously imposes a binding obligation on the States."  Rio Grande Community Health Center, Inc., 397 F.3d at 73 (citing Blessing v. Freestone, 520 U.S. at 340-41); see also Rolland v. Romney, 318

---

[16]  42 U.S.C. § 1396a(a)(10)(B) provides that medical assistance made available to Medicaid recipients who are categorically needy and medically needy, respectively, shall "not be less in amount, duration, or scope than the medical assistance made available to any other such individual."  Id.

[17]  Under 42 U.S.C. § 1396a(a)(37)(A) a State's Medicaid plan "must provide for claims payment procedures which (A) ensure that 90 per centum of claims for payment (for which no further written information or substantiation is required in order to make payment) made for services covered under the plan and furnished by health care practitioners through individual or group practices or through shared health facilities are paid within 30 days of the date of receipt of such claims and that 99 per centum of such claims are paid withinn 90 days of the date of the receipt of such claims. . ." Id.

13

F.3d 42, 52 (1st Cir. 2003).   Recently, the Supreme Court "tweaked the first part of the *Blessing* test, and insisted that nothing short of an unambiguously conferred right would support a cause of action under § 1983." <u>Michelle v. Holsinger</u>, 356 F.Supp.2d 763, 766 (E.D. Ky. 2005)(citing <u>Gonzaga University v. Doe</u>, 536 U.S. 273, 283 (2002)); <u>see also</u> <u>Long Term Care Pharmacy Alliance v. Ferguson</u>, 362 F.3d 50, 57-58 (1st Cir. 2004).

In line with the foregoing, courts  must look at the specific statutory provision in question and determine whether Congress intended to create a federal right by utilizing 'explicit rights-creating language.'" <u>See</u> <u>Westside Mothers v. Olszewki</u>, 368 F.Supp.2d 740, 748 (E.D.Mich. 2005)(citing <u>Gonzaga</u>, 536 U.S. at 284).  Rights-creating language 'must clearly impart an 'individual entitlement,' and have an 'unmistakable focus on the benefitted class.'" <u>Sabree v. Richman</u>, 367 F.3d 180, 187 (3rd Cir 2004)(citations omitted); see also, <u>Sanchez v. Johnson</u>, 416 F.3d 1051, 1057 (9th Cir. 2005)(analyzing the kind of rights-creating language that reveals the congressional intent necessary to create individually enforceable rights in a spending statute, such as Medicaid).

Under section 1983, plaintiffs seek to enforce §§ 1396a(a)(10)(B) and 1396a(a)(37) of the Medicaid Act against alleged violations by defendants.[18]  The Court will consider each statutory provision separately.

a.  *Section 1396a(a)(10)(B)*

The first Medicaid statute under which plaintiffs claim section 1983-enforceable rights is Section 1396a(a)(10)(B) which requires that "the medical assistance made available to any individual described in subparagraph (A)– (i) shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual. . .". 42 U.S.C. § 1396a(a)(10)(B).

---

[18]  Plaintiffs also make reference to § 1396u-2f of the Medicaid Act.  The Court will discuss section 1396u-2f as it relates to section 1396a(a)(37).

14

This section of the Medicaid Act is "often referred to as the 'comparability' provision, [and] requires states to ensure that Medicaid services to certain categories of 'individuals' be sufficient in scope 'amount, duration, or scope' when compared with others similarly situated." See Mendez v. Brown, 311 F.Supp.2d 134, 138 (D. Mass 2004); see also, 42 U.S.C. § 1396a(a)(10). Several courts have found that section 1396a(a)(10) creates a private cause of action under 42 U.S.C. § 1983.  See e.g., Sabree v. Richman, 367 F.3d at 192 (finding that section 1396a(a)(10) conferred rights actionable under section 1983 to plaintiffs, a class of mentally retarded adults) ; Westside Mothers v. Haveman, 289 F.3d 852, 862-63 (6th Cir. 2002); Michelle P. v. Holsinger, 356 F.Supp.2d at 766 (finding that section 1396a(a)(10)(B) of the Medicaid Act conferred privately enforceable rights under section 1983 to plaintiffs, mentally retarded individuals); Mendez v. Brown, 311 F.Supp.2d at 138 (Medicaid recipients, clinically obese women, found to have a section 1983 cause of action under section 1396a(A)(10)); Martin v. Taft, 222F.Supp.2d 940, 977 (S.D. Ohio 2002)(finding that a class of persons with mental retardation may enforce the 'comparability of services' provision of the Medicaid Act under section 1983);  Antrican v. Buell, 158 F.Supp.2d 663, 671-72 (E.D. N.C. 2001), aff'd on other grounds, 290 F.3d 178 (4th Cir. 2002); Rolland v. Cellucci, 52 F.Supp.2d 231, 238-40 (D. Mass. 1999).  See also Oklahoma Chapter of the American Academy of Pediatrics (OKAAP) v. Fogarty, 366F.Supp.2d 1050, 1111 (N.D. Okla. 2005)(citing various cases in which courts have concluded that section 1396a(a)(10) creates enforceable federal rights).  In all of the aforementioned cases, however, plaintiffs have been individual patients, and thus were the intended beneficiaries of section 1396a(a)(10).

"[U]nder Gonzaga, a plaintiff may bring suit under § 1983 as an intended beneficiary of a statute only if the statute unambiguously demonstrates congressional intent to confer an individual or personal right on that plaintiff." Michelle P. v. Holsinger, 356 F.Supp.2d at 766 (citing Gonzaga, 536 U.S. at 283)). See e.g., Long Term Care Pharmacy Alliance v. Ferguson, 362 F.3d at 56-60 (finding that closed pharmacies were not the intended beneficiaries of Medicaid's section 1396a(a)(13)(A), and finding that after Gonzaga providers do not have a private right of action under section 1396a(a)(30)(A)).  The text and structure of section

15

1  1396a(a)(10)(B), on its face, simply does not intend to benefit health care providers, such as

2  Plaintiffs.  See e.g., K&A Radiologic Technology Services, Inc. v. Commissioner of the Dept.

3  of Health of the State of New York, 189 F.3d 273, 281 (2nd Cir. 1999)(finding that Medicaid

4  Act's  section 1396a(a)(10), cannot be enforced under section 1983 by medical providers,

5  given that it was only intended to benefit Medicaid recipients).  Therefore, the Court concludes

6  that providers, such as Plaintiffs, do not have a private right of action under subsection

7  1396a(a)(10).[19]

8

9  *b.  Section 1396a(a)(37)(A)*

10      The second Medicaid statute under which Plaintiffs claim section 1983-enforceable

11  rights is Section 1396a(a)(37) which requires a State's Medicaid plan to "provide for claims

12  payment procedures which (A) ensure that 90 per centum of claims for payment (for which no

13  further written information or substantiation is required in order to make payment) made for

14  services covered under the plan and furnished by health care practitioners through individual

15  or group practices or through shared health facilities are paid within 30 days of the date of

16  receipt of such claims and that 99 per centum of such claims are paid within 90 days of the date

17  of the receipt of such claims. . ." 42 U.S.C. §1936a(a)(37).  In their amended complaint,

18  plaintiffs argue that section 1936a(a)(37) shall be read in conjunction with section 1396u-2f,

19  _____

20      [19]  In an effort to circumvent the fact that health care providers do not have a
    private right of action under section 1396a(a)(10), plaintiffs make reference to the

21  "assignment of benefit" (AOB) forms signed by their patients. Plaintiffs cite an ERISA

22  case, City of Hope Nat'l Med Ctr. v. Seguros de Servicios de Salud, 156 F.3d 223, 227
    (1st Cir. 1998), in support of the proposition that the AOB forms entitle them to enforce

23  the rights of their dual-eligible ESRD patients.  The Court disagrees.  In Seguros de

24  Servicios de Salud, the First Circuit Court ruled that ERISA does not preclude welfare
    plan benefit assignments.  ERISA, unlike Medicare of Medicaid, is funded by private

25  entities (mostly employers).  Plaintiffs have not cited a single case, and the Court has

26  found none, where Medicaid and Medicare beneficiaries have been able to assign their
    section 1983 rights to health care providers by filing out AOB forms prior to getting their

27  treatment.  After all, Medicaid and Medicare are chiefly concerned with providing

28  benefits to qualified individuals not to MCOs.

16

which states, in relevant part,  that: "[a] contract . . . with a medicaid managed organization shall provide that the organization shall make payment to health care providers for items and services which are subject to the contract and that are furnished to individuals eligible for medical assistance under the State plan . . .on a timely basis consistent with the claims payment procedures described in section 1396a(a)(37)(A) of this title. . .". 42 U.S.C. § 1396u-2f.

Recently the First Circuit Court of Appeals concluded that a Medicaid provision very similar to section 1396a(a)(37) was enforceable under section 1983.  See Rio Grande Community Health Center, Inc. v. Rullan, 397 F.3d at 75 (finding that a federally-qualified health center had a private action under section 1983 to enforce Medicaid's section 1396a(bb)(5)).  Just like section 1396a(bb)(5), section 1396a(a)(37) identifies a discrete class of beneficiaries, namely "health care practitioners and/or facilities."  Finally, when analyzed under the Blessing-Gonzaga framework,  the language of the statutory provision, that the "State plan for medical assistance must provide for claims payment procedures. . ." ensuring that a specific percentage of the services are paid within a specified period of time, constitutes rights-creating language, because that provision is neither vague nor amorphous, in imposing a binding obligation on the State.   Accordingly, the Court concludes that section 1983 provides plaintiffs, health care providers, with a cause of action to pursue their claims under section 1396a(a)(37) and section 1396u-2f.

### III. Due Process and Equal Protection Claims

In Count II of the Amended Complaint Plaintiffs claim that the Commonwealth defendants violated their rights to due substantive and procedural due process and equal protection.[20]  Specifically, plaintiffs assert that the Commonwealth Defendants violated their constitutional rights by instituting a  harmful policy intended to deny reimbursement under Medicaid to dual-eligible ESRD patients while at the same time providing such reimbursement

---

[20] The Commonwealth defendants do not address Plaintiffs' constitutional allegations in their motion to dismiss.

17

1   to other Medicaid patients.

2

3   *a. Equal Protection*

4       The Fourteenth Amendment to the United States Constitution provides that no State

5   shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.,

6   Amend. XIV, § 1. "To survive scrutiny, an equal protection claim must be based upon a

7   challenge to a legislative or administrative scheme or state promulgated rule, or upon an

8   unconstitutional application of such laws or rules." <u>Futura Development of Puerto Rico, Inc.</u>

9   <u>v. Estado Libre Asociado de Puerto Rico</u>, 276 F.Supp.2d 228, 236 (D.P.R. 2003)(citing <u>Koelsh</u>

10  <u>v. Town of Amesbury</u>, 851 F.Supp. 497, 501 (D. Mass. 1994)).   In order to establish an equal

11  protection claim, plaintiffs have "to allege facts indicating that, 'compared with others

12  *similarly situated ,* [they were] selectively treated based on impermissible considerations such

13  as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious

14  or *bad faith* intent to injure a person.'" <u>Futura Development of Puerto Rico, Inc.</u>, 276

15  F.Supp.2d at 236 (citing <u>Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortgage Fin. Corp.</u>, 246

16  F.3d 1, 7 (1st Cir. 2001)(citing in turn <u>Rubinovitz v. Rogato</u>, 60 F.3d 906, 909-10 (1st Cir.

17  1995)).

18       Plaintiffs claim that the Commonwealth Defendants have instituted a policy (via the

19  1999 Letter Rulings) by which Medicaid reimbursements are being distributed in a

20  discriminatory fashion.  Specifically, Plaintiffs claim that indigent patients with conditions

21  *other than* ESRD receive Medicaid benefits under the Commonwealth's Medicaid Plan, while

22  ESRD patients do not.   Plaintiffs equal protection claim is unsustainable.  Plaintiffs have not

23  claimed membership in a protected class or demonstrated that other health care providers,

24  similarly situated, have been treated differently concerning the reimbursement payments for

25  dual-eligible ESRD patients.   <u>See e.g., Centro Medico del Turabo, Inc., v. Feliciano de</u>

26  <u>Melecio</u>, 406 F.3d 1, 9 (1st Cir. 2005).  Accordingly, plaintiffs' equal protection claim fails as

27  a matter of law.

28

18

*b. Due Process Claims*

To prevail on a *procedural due process* claim, plaintiffs must demonstrate the existence of a constitutionally protected property interest.  See e.g.  Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).  The requirements of procedural due process are satisfied, however, if a post-deprivation remedy is available.  Futura Development of Puerto Rico, Inc. v. Estado Libre Asociado de Puerto Rico, 276 F.Supp.2d at 238.   Assuming, *arguendo*, that plaintiffs have a legitimate property interest in receiving Medicaid reimbursements[21], they still need to allege that no adequate post-deprivation remedy was available.  The amended complaint fails to state any factual reference as to how the Commonwealth refused to provide the aforementioned remedy, or if the remedy was even requested by plaintiffs.  Therefore, the Court finds that plaintiffs' procedural due process claim also fails.

Plaintiffs' claim of *substantive due process* is equally unavailing.  Plaintiffs' substantive due process claim is based on the allegation that the Commonwealth acted "arbitrarily and capriciously" to the point of "shocking the conscience" when it enacted the 1999 Letter Rulings. "Substantive due process rights guard against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective.   Only the most egregious official conduct can be said to be arbitrary in the constitutional sense and therefore unconstitutional."   County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)(citations omitted).   In their complaint Plaintiffs have failed to allege facts that would sustain a finding that the Commonwealth's behavior was deliberate, outrageous, or egregious.  See e.g.,  Pestera Center for Mental Health v. Lawton, 111 F.Supp.2d 768, 779 (S.D. West Virginia 2000).   Thus, Plaintiffs' have failed to allege sufficient facts to sustain a claim for substantive due process.

---

[21]  See Jordan Hospital, Inc. v. Shalala, 276 F.3d 72, 78  n5 (1st Cir. 2002)(citing cases where courts have found that providers do not have a property interest in Medicaid reimbursements).

19

1 *IV. The Commonwealth Defendants-Eleventh Amendment Immunity*

2      The Secretary of the Department of Health of Commonwealth of Puerto Rico, Dr.

3 Johnny Rullán, and the Director of the Commonwealth's Office of Economic Assistance to the

4 Medically Indigent, Wendy Matos filed a motion to dismiss based on Eleventh Amendment

5 grounds. (See Docket No. 56)[22].   However, under *Ex Parte Young* , Eleventh Amendment

6 immunity does not bar prospective injunctive relief against state officials.  See Redondo-

7 Borges v. United States Dept. of Housing and Urban Development, 421 F.3d at 7;  Whalen v.

8 Massachusetts Trial Court, 397 F.3d 19, 28 (1st Cir. 2005);  see also, John D. v. Swift, 310 F.3d

9 230, 237 (1st Cir. 2002)(stating that eleventh amendment does not prevent Medicaid

10 beneficiaries from seeking prospective injunctive relief against state officials in federal court).

11  In fact, the doctrine of *Ex Parte  Young*, "does [not] bar relief (whether in the form of money

12 damages or an injunction) against the commonwealth defendants in their individual

13 capacities."  Redondo-Borges v. United States Dept. of Housing and Urban Development, 421

14 F.3d at 7 (citing Ex parte Young, 209 U.S. 123, 159 (1980)).   Additionally, this Court has the

15 authority to enjoin a state official who fails to comply with federal law.  See Ramírez v. P.R.

16 Fire Serv., 715 F.2d 694, 697 (1st Cir. 1983);  N.P.P. v. Hernández-Colon, 779 F.Supp. 646,

17 652 (D.P.R. 1991).

18      In their motion, Defendants Dr. Rullán and Matos further allege that the complaint does

19 not contain any allegations of their personal action or inaction that could amount to an actual

20 deprivation of Plaintiffs' rights.  The Court disagrees.  Plaintiffs have alleged that Dr. Rullán,

21 as the Secretary of the Commonwealth's Department of Health, and Wendy Matos, as the

22 Director of the Commonwealth's Office of Economic Assistance to the Medically Indigent,

23 were personally involved in making decisions relative to the payment (or non-payment) of the

24 Medicare deductibles for dual-eligible ESRD patients. (See Amended Complaint, Docket No.

25 _____

26      [22]  Defendants Dr. Rullán and Matos further allege that they are protected from

27 monetary damages by the principle of qualified immunity.  The Court, however, will not
consider this argument given that plaintiffs do not seeking monetary damages form

28 Rullán and Matos in their amended complaint.

20

1  37, ¶¶ 69-70; 75-76; 79-83).   At this point of the proceedings, Plaintiffs allegations are

2  sufficient to survive defendants' motion to dismiss.

3       The Court finds that plaintiffs' claims are not barred by the Eleventh Amendment, given

4  that Plaintiffs seek only to ensure that the state officials fulfill their prospective duty to comply

5  with federal law by authorizing the payment of the Medicare deductibles for dual-eligible

6  ESRD patients.   Therefore, the motion to dismiss filed by Defendants Rullán and Matos

7  (Docket No. 56) is hereby **DENIED**.

8

9  *V.  The Federal Defendants*:

10      The Secretary of the U.S. Department of Health and Human Services, Michael O.

11 Leavitt, and Mark B. McClellan,  the Administrator of the CMS filed a motion to dismiss

12 (Docket No. 91) on several grounds.[23]   Specifically, the Federal Defendants argue that

13 plaintiffs' claims should be dismissed for lack of subject matter jurisdiction and lack of

14 standing.

15      To have standing plaintiffs must  make a triparte showing: (1) plaintiffs must

16 demonstrate that they have suffered an injury in fact, that their injury is fairly traceable to the

17 allegedly unlawful conduct, and that the relief sought promises to redress the injury sustained.

18 See Osediacz v. City of Cranston, 414 F.3d 136, 139 (1st Cir. 2005)(citing Lujan v. Defenders

19 of Wildlife, 504 U.S. 555 (1992)); see also Massachusetts Federation of Nursing Homes, Inc.

20 v. Commonwealth of Massachusetts, 791 F.Supp. 809, 904-05 (D. Mass. 1992)(finding that

---

22 [23] In their motion to dismiss, the Federal Defendants make the argument that
23 Puerto Rico is not required to pay Medicare deductibles and/or coinsurance for QMBs
   (including dual eligibles).   Interestingly enough, the federal defendants now align
24 themselves with the argument espoused by the Commonwealth defendants,  that
   originally had been opposed by them in the correspondence between CMS and the
25 Commonwealth's Director of the Office of Economic Assistance to the Medically
26 Indigent. (See Docket No. 91, Exhibits  B-D). The Court has already discussed this issue
   in section *1c* of this opinion and concluded that the Commonwealth's decision not to
27 participate in the QMB program, does not exempt them from its responsibilities towards
28 dual-eligible ESRD patients under Medicaid.

21

1  plaintiffs, Medicaid providers,  had standing to maintain an action against the Secretary of

2  HHS challenging the Secretary's approval of amendments to a state plan).

3         The Court finds that Plaintiffs have standing to bring their claims against the Secretary

4  of Health and Human Services and against the Administrator of CMS.   The complaint alleges

5  that Plaintiffs have lost approximately 20 million dollars in Medicaid funding since 1999. The

6  Federal Defendants assert, however, that the injuries suffered by Plaintiffs have resulted form

7  the actions of the Commonwealth defendants (via the ASES directives).  The Court disagrees.

8  It is undisputed that 42 U.S.C. section 1936c[24] grants the Federal Defendants with the

9  enforcement powers necessary to assure a State's compliance with the Medicaid Act.  Even

10  though the Federal Defendants specifically stated that Puerto Rico was not fulfilling its

11  obligations under the Medicaid Act, they nonetheless failed to take any action against the

12  Commonwealth[25].  (See e.g., Banks v. Secretary of the Indiana Family and Social Services

13  Administration, 997F.2d 231, 240 (7th Cir. 1993)(finding  that for standing purposes plaintiffs

14  had established that their injury arose from the Secretary's lack of proper enforcement of

15  —————————————————

16      [24]  42 U.S.C. § 1396c grants enforcement powers to the Secretary of HHS.  Said

17  provision states: "If the Secretary, after reasonable notice and opportunity for hearing to

18  the State agency administering or supervising the administration of the State plan
    approved under this subchapter, finds– (1) that the plan has been so changed that it no

19  longer complies with the provisions of section 1396a of this title; or (2) that in the

20  administration of the plan there is a failure to comply substantially with any such
    provisions; the Secretary shall notify such State agency that further payments will not be

21  made to the State (or, in his discretion, that payments will be limited to categories under

22  or parts of the State plan not affected by such failure), until the Secretary is satisfied that
    there will no longer be any such failure to comply.  Until he is so satisfied he shall make

23  no further payments to such State (or shall limit payments to categories under or parts of
    the State plan not affected by such failure).

24

25      [25]  The exhibits filed by the Federal Defendants in support of their motion to
    dismiss show that in multiple occasions CMS informed the Commonwealth Defendants

26  of their obligations under Medicaid.  In fact, in one of the letters, CMS asks the

27  Commonwealth to submit a revised State Plan by a specific date, and warns that failure to
    do the same might result in compliance action against Puerto Rico's Department of

28  Health.  (See Docket No. 91, Exhibits B-D, CMS's letters).

22

1    Indiana's Medicaid plan).   Finally, the harm to plaintiffs is likely to be redressed if the relief

2    sought is granted, since the Plaintiffs seek that the Court directs  the Federal Defendants to

3    provide them with a hearing in accordance with section 1396c.

4           In their motion to dismiss the Federal Defendants further assert that this Courts lacks

5    subject matter jurisdiction to entertain Plaintiffs' claims against the Secretary of HHS.

6    Defendants are correct insofar Plaintiffs' constitutional claims have been characterized as

7    section 1983 claims.  "[S]ection 1983 claim[s] normally do[] not lie against a federal official."

8    Redondo-Borges v. United States Dept. of Housing and Urban Development, 421 F.3d at 6.

9    (citations omitted).    Nevertheless, plaintiffs' claim against the federal defendants for

10   declaratory and injunctive relief is premised in this Court's mandamus power.   Contrary to

11   defendants allegations section 1361 of Title 28 provides that "[t]he district courts shall have

12   original jurisdiction of any action in the nature of mandamus to compel an officer or employee

13   of the United States or any agency thereof to perform a duty owed to the plaintiff."  See also

14   In Re: Medicare Reimbursement Litigation v. Thompson, 309 F.Supp.2d 89, (D.D.C.

15   2004)(granting writ of mandamus to providers of Medicare to compel the Secretary of HHS

16   to reopen final payment decisions relative to reimbursements for services provided to indigent

17   patients).

18          To qualify for mandamus relief under section 1361 plaintiffs need to show that they

19   have "a clear right to the relief sought, [that they have] no other adequate remedy, and that

20   there is a clearly defined and peremptory duty on the part of the defendants, [here the Secretary

21   of HHS], to do the act in question."    Georges v. Quinn, 853 F.2d 994, 995 (1st Cir.

22   1988)(citations omitted).  Plaintiffs, health care providers of dialysis services, are entitled to

23   the relief they seek: that the Secretary of HHS commence proceedings in accordance with

24   his/her statutory duty to determine whether the Commonwealth, in administering its State Plan,

25   is substantially complying with the Medicaid Act. See 42 U.S.C. § 1396c.  Whereas here, the

26

27

28

23

1  Secretary (via the CMS letters)[26], has made a determination that a part of the state plan is not

2  in compliance with the Medicaid law, "the Secretary should be forced to do [his/]her duty as

3  commanded by 42 U.S.C. section 1396c."  See Robinson v. Pratt, 497 F.Supp. 116, 122  (D.

4  Mass. 1980).

5         The record supports Plaintiffs' contention that the Federal Defendants have been

6  inextricably involved in the circumstances leading to this action from the beginning.   In fact,

7  the Federal Defendants' failure to enforce the pertinent Medicaid provisions has had a direct

8  effect on the Commonwealth's decision not to pay the 20% deductible to ESRD dual eligible

9  patients serviced in plaintiffs' dialysis clinics.  "In the event that the Secretary has failed to

10 comply with [his/her] statutory duties, then the Secretary should be made to defend his[/her]

11 action (or inaction) in court."   Garrity v. Gallen, 522 F.Supp. 171, 203 (D.N.H. 1981).

12 Therefore,  the Federal Defendants' Motion to Dismiss (Docket No. 91) is hereby **DENIED**.[27]

13

14 _VI. The MCO Defendants_

15        In their motions to dismiss, the MCO Defendants argue that they are not liable to

16 plaintiffs under section 1983 given that they are private insurance companies and thus are not

17 state actors.  Specifically, the MCO Defendants argue that the relationship between them and

18 ASES is more akin to that of a contractor performing services from the government, given that

19 they have no authority to make decisions relative to what Puerto Rico's Medicaid should or

20 should not cover.  (See Docket No. 57, Triple-C's Motion to Dismiss; Docket No. 67, MCS's

21 Motion to Dismiss;  and Docket No. 71, HUMANA's Motion to Dismiss).

22        Section 1983 imposes liability on anyone who, acting under color of law, deprives a

23 person of any 'rights, privileges, or immunities secured by the Constitution and laws.' 42

24

25      [26]  The letters submitted by the Federal Defendants in support of their motion to

26 dismiss support plaintiffs' position that the Federal Defendants did nothing  to correct  the
   Commonwealth's alleged non-compliance with certain provision of the Medicaid Act.

27      [27]  The Court expects that the federal defendants shall comply with the ministerial duties

28 set forth in Section 1396c.

24

1   U.S.C. § 1983. "The 'under color of state law' element of § 1983 means that 'merely private

2   conduct, no matter how discriminatory or wrongful' is not actionable under § 1983." Grant

3   v. Trinity Health-Michigan, 2005 WL 2402326 *11 (E.D. Mich. Sept. 30, 2005)(citing Am.

4   Mfrs. Mut. Ins. Co. V. Sullivan, 526 U.S. 40, 50 (1989)). "Only when a private individual's

5   conduct can be deemed 'fairly attributable to the State' will a § 1983 cause of action exist

6   against that individual." Destek Group, Inc. v. State of New Hampshire Public Utilities

7   Commission, 318 F.3d 32, 40 (1ˢᵗ Cir. 2003)(citing Lugar v. Edmondson Oil Co., 457 U.S. 922,

8   937 (1982)). For the MCO defendants to have acted under state law, their actions relative to

9   the non-payment of the 20% deductible must be fairly attributable to the State. The First

10  Circuit has "employed the following three tests to determine whether a private party fairly can

11  be characterized as a state actor: the state compulsion test, the nexus/joint action test, and the

12  public function test." Estades-Negroni v. Hospital San JuanCapestrano, 412 F.3d 1, 5 (1ˢᵗ Cir.

13  2005)(citing Rockwell v. Cape Cod Hosp., 26 F.3d 254, 257 (1ˢᵗ Cir. 1994)); see also

14  Logiodice v. Trustees of Maine Central Institute, 296 F.3d 22 (1ˢᵗ Cir. 2002).

15      Plaintiffs argue that the Federal MCO Defendants are state actors given that under the

16  Commonwealth's third-party payor system, the MCO-insurers act on behalf of the

17  Commonwealth itself to cover all Medicaid claims. In other words, plaintiffs assert that the

18  MCOs are 'state actors' because they have assumed the exclusive governmental function of

19  paying Medicaid claims on behalf of the Puerto Rico government.

20      Puerto Rico, like many other states, runs its Medicaid system through a managed care

21  approach. Yet despite the fact that many other states provide medical services and/or payment

22  to health provider through MCOs and/or HMOs, the Court is aware of only one decision were

23  a health maintenance organization (HMO) has been found to be a 'state actor' subject to

24  constitutional constraints.[28] See Grijalva v. Shalala, 152 F.3d 1115 (9ᵗʰ Cir. 1998); see also,

25

26

27      [28] In Grijalva the HMOs, which contracted with the federal government to provide
    medical care to Medicare beneficiaries, were found to be 'federal' government actors. A
28  parallel can be made to the MCOs under a state's Medicaid program.

25

1  Tennessee Assoc. of Health Maintenance Organizations, Inc., 262 F.3d 559, 563 n2 (6th Cir.
2  2001)(trial court's ruling that MCOs were state actors vacated).  Grijalva, however, has been
3  reversed in light of the Supreme Court's decision in American Manufacturers Mutual
4  Insurance Co. V. Sullivan, 526 U.S. 40 (1999)(finding that a private insurer's decision to
5  withhold payment and seek utilization review of the reasonableness of a particular medical
6  treatment was not fairly attributable to the State as to subject the insurer to constitutional
7  constraints).

8          The determination of whether or not the acts by the private MCOs  may comprise state
9  action requires a fact specific inquiry relative to the relationship between the MCOs, ASES,
10 and the Commonwealth's Health Department, and the level of control that the MCOs have or
11 do not have over said entities relative to the implementation of the Medicaid Program.  The
12 Court finds that such a fact-specific inquiry is better suited for summary judgment, whereas
13 here, plaintiffs have plead sufficient facts to support a finding that the relationship between the
14 MCOs and the Commonwealth is sufficiently entwined as to result in the MCOs' liability as
15 state actors.   In view of the aforementioned, the MCO Defendants' Motions to Dismiss
16 (Docket Nos. 56, 67 and 71) are hereby **DENIED**.

17         The MCO Defendants argue that Plaintiffs claims under section 1983 are time-barred
18 given that Plaintiffs are aware since 1999  of the Defendants' alleged violation. Plaintiffs,
19 however, argue that Defendants have engaged in a continuing scheme to evade payment,
20 therefore tolling the statute of limitations period.  The Court agrees.  Accepting as true the
21 factual allegations relative to Defendants' continuous pattern of illegal conduct, it is not clear
22 that Plaintiffs' section 1983 claims are time-barred.  See e.g., Futura Development of Puerto
23 Rico, Inc. v. Estado Libre Asociado de Puerto Rico, 276 F.Supp.2d at 245.

24         The Court further asserts supplemental jurisdiction of Plaintiffs' breach of contract
25 claims against the MCO Defendants under 28 U.S.C. § 1367(a), given that the federal and state
26 law claims derive from a common nucleus of operative fact.

27
28

26

## **CONCLUSION**

1

2        In view of the aforementioned the Commonwealth Defendants' motion to dismiss

3    (Docket No 56) is hereby **DENIED**.  The Federal Defendants' motion to dismiss  (Docket No.

4    91) is also **DENIED.**   In addition, the Motions to Dismiss filed by the MCO Defendants

5    (Docket Nos. 57, 67 and 71) are also **DENIED**.  Plaintiffs' due process and equal protection

6    claims against the Commonwealth Defendants are hereby **DISMISSED** for failure to state a

7    cognizable claim.

8        **IT IS SO ORDERED.**

9        San Juan, Puerto Rico, November 1,  2005.

10

11                                                      S/ HECTOR M. LAFFITTE
                                                        U.S. District Court Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28